UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
STEVEN M. JOHNSON                )
          Plaintiff,             )
                                 )
     v.                          )
                                 )
KATHLEEN DENNEHY,                )
LUIS SPENCER, SUPERINTENDENT     )
CAPTAIN DAVID SULLIVAN,          )    C.A. No. 04-12086-WGY
MICHAEL LYONS,                   )
SGT. THOMAS FICO,                )
DONALD MAHONEY,                  )
SCOTT BALDWIN,                   )
          Defendants             )
```

MEMORANDUM AND ORDER

For the reasons set forth below 1) all of Plaintiff's claims contained in the Amended Complaint against defendant Commissioner Kathleen Dennehy are Dismissed; 2) Plaintiff's claim for Due Process violations with respect to his disciplinary hearing are dismissed as to all defendants except Superintendent Spencer and Hearing Officer Michael Lyons; 3) Plaintiff's claims with respect to retaliation for filing, and later withdrawing, a grievance against an officer shall proceed with respect to all named defendants except Commissioner Dennehy; 4) Plaintiff's claims with respect to denial of religious expression are dismissed as to all named defendants except Superintendent Spencer; and 5)Summonses

1

shall issue with respect to all defendants except Commissioner Dennehy, and Plaintiff shall serve a copy of this Order along with the Amended Complaint.  Defendants are instructed to respond to the Amended Complaint, in accordance with this Memorandum and Order.

<u>BACKGROUND</u>

On September 20, 2004, Plaintiff Steven Johnson, an inmate at MCI Norfolk, filed a self-prepared §1983 civil rights complaint.  The complaint initially named Kathleen Dennehy, the Commissioner of the Department of Corrections, as the sole defendant, and alleged that Johnson's constitutional rights were violated when he was disciplined for filing an inmate grievance.  The complaint also alleged that he is not permitted to freely exercise his religion.

On October 15, 2004, this Court ordered Johnson to show cause why the case should not be dismissed, or in the alternative for Johnson to file an amended complaint. This Court noted that 1) Johnson failed to identify the proper defendants to the dispute, and 2) Johnson failed to allege any specific allegations against the named defendant.

On November 18, 2004, in response to the Court's Order, Johnson filed an Amended Complaint. The Amended Complaint

retained Commissioner Dennehy as a defendant, and included six additional prison-employee defendants.  These include: 1) Luis Spencer, Superintendent MCI Norfolk, 2) Captain David Sullivan, 3) Michael Lyons, hearing officer, 4) Sergeant Thomas Ficco, 5) Donald Mahoney (corrections officer), and 6) Scott Baldwin (corrections officer).

In the amended complaint, Johnson claims that prison officials have placed him in segregation in retaliation for him filing a grievance against the facility.  Amended Complaint at 1-2.  Additionally, Johnson claims that his confinement violates law because prison officials failed to follow their own procedure when placing him in segregation. Id. at 2.  Specifically, Johnson claims that officials placed him in the unit before he was afforded a hearing, and that Johnson was not permitted to call witnesses at his disciplinary hearing.  Id.

Johnson's specific claims against each defendant are as follows: Johnson claims that Commissioner Dennehy violated the law by refusing to order his return of status and return to the general population.  Id.  Johnson alleges that Superintendent Luis Spencer violated his constitutional rights by placing him in segregation as retaliation for his filing a

grievance. <u>Id</u>.  Johnson also claims that Spencer violated his
First Amendment right of freedom of religion by refusing to
permit Johnson to practice his Native American religion.  <u>Id</u>.
at 3.   Specifically, with respect to the religious expression
claims, Johnson alleges that: 1) Spencer refuses to allow him
to meet with the Native American Chaplain; 2) Spencer will not
allow him to practice a Smudge and Pipe ceremony; and 3) that
Spencer has ignored his complaints that the library sends him
Christian literature instead of his requested Native American
literature.  <u>Id</u>.

Johnson alleges that Captain David Sullivan retaliated
against him by allowing his placement in the segregation unit,
and that Sullivan shows "animosity" towards Johnson.  <u>Id</u>. at
4.  Johnson claims that Michael Lyons, the hearing officer,
violated his constitutional rights by 1) refusing to allow
Johnson to call witnesses at his hearing; 2) refusing to allow
him to introduce evidence of his "mental condition"; and 3)
finding that Johnson had waived his right of representation
(not counsel) at the hearing; a fact which Johnson disputes.
<u>Id</u>.  Finally, Johnson alleges that Sgt. Ficco, Officer Donald
Maloney, and officer Scott Baldwin conspired with the hearing
officer to find him guilty, and that the defendants scared and

4

intimidated him by surrounding him and asking him questions.
Id. at 5.

These allegations stem from a grievance that Johnson
filed against an officer O'Malley, who is not named as a
defendant in the present case. See id. at 6-8. After filing
this grievance, Johnson states that his Native American
Brothers advised him to withdraw this claim because it would
probably lead to an extended stay in the segregation unit.
Id. at 6-7. Johnson claims that when he went to withdraw his
grievance, Sgt. Ficco, and officers Maloney and Baldwin stood
over him asking him questions. Id. at 7. He further claims
that the officers refused to allow him to properly answer
questions, interrupted him, and mocked him. Id. He says he
was scared that the officers would attack him and he began
having a panic attack. Id. Johnson claims that Sgt. O'Malley
stated "we don't like people muddying our name up here." Id.
Immediately following this incident, Johnson was placed in
segregation. Id. Johnson claims the placement in segregation
and the charges lodged against him were in retaliation for
withdrawing his original grievance against Officer O'Malley.
Id. Johnson was charged with "lying to and interfering with
an Officer's duties," by filing a frivolous or fraudulent

grievance.  _See Id_.

Johnson asks this Court to grant the following relief: 1) grant summary judgment in his favor; 2) declare that defendants' actions were unconstitutional; 3) award court costs; 4) order the facility to give him back pay; 5) award punitive damages of one hundred dollars per day; 6) issue injunctive relief; and 7) force MCI Norfolk to follow its procedural rules.  _Id_. at 8.

DISCUSSION

I.  The Court May Screen This Action

Because Johnson is a prisoner, he is subject to the provisions of the Prison Litigation Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  _See_ 28 U.S.C. §1915 (proceedings _in forma pauperis)_; 28 U.S.C. §1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, _Neitzke v. Williams_, 490 U.S. 319, 325 (1989), or if the

action fails to state a claim on which relief may be granted

or seeks monetary relief against a defendant who is immune

from such relief.  See 28 U.S.C. §1915(e)(2). Complaints filed

in forma pauperis may be dismissed sua sponte and without

notice under §1915 if the claim is based on an indisputably

meritless legal theory or factual allegations that are clearly

baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33

(1992).

Section 1915A also authorizes the Court to review

prisoner complaints in civil actions that seek redress from a

governmental entity or officers or employees of a governmental

entity and to dismiss the action regardless of whether or not

the plaintiff has paid the filing fee, if it lacks an arguable

basis in law or fact, fails to state a claim, or seeks relief

from a defendant immune from such relief.  28 U.S.C. §1915A.

In this case, even construing his pleadings generously,

Haines v. Kerner, 404 U.S. 519, 520 (1972), much of Johnson's

action is subject to dismissal for the reasons stated below.

II.   Plaintiff's claims against Kathleen Dennehy
           Commissioner of Corrections are dismissed

In order to state a §1983 claim, a plaintiff must allege (1)

that the conduct complained of was committed by a person acting under

color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 998 (1st Cir. 1992).  In this case, any claims by Johnson against Commissioner Dennehy are dismissed, for several reasons.

First, to the extent that Plaintiff seeks monetary damages against Commissioner Dennehy in her official capacity, his claims are barred because defendant is immune from liability.  <u>See</u>  28 U.S.C. §1915(e)(2)(B).  Under sovereign immunity, a plaintiff cannot sue an official acting within the scope of his/her office.  <u>Will v. Michigan Department of State Police</u>, 491. U.S. 58, 64-71 (1989).  "...[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  <u>Id</u>. at 71.  Thus, Johnson's claims that Commissioner Dennehy violated his rights by failing to reinstate his status and return him to the general population, constitutes an attack on an agency of the state.  Accordingly, the Commissioner is immune from suit.

Moreover, to the extent that Johnson seeks to hold

8

Commissioner Dennehy liable for acts of other prison officials, such claims are also dismissed.  *Respondeat superior* is not a viable theory of §1983 liability here. Capozzi v. Department of Transp., 135 F. Supp. 2d 87, 98 (D. Mass. 2001) citing Ruiz v. Riley, 209 F.3d 24 (1st Cir. 2000). Rather, a supervisor is liable only for his own acts and omissions and faces no vicarious liability for the acts of his or her subordinates. See id.

Finally, to the extent that Johnson seeks to sue Commissioner Dennehy in her personal capacity for her personal failure to put him back into the general population, such claim is also not viable because nowhere in the Amended complaint does Johnson allege any facts indicating that any action or inaction by Commissioner Dennehy violated a protected liberty interest or actually injured him.

The Due Process Clause, standing alone, does not create in plaintiff a protected interest in remaining in the general prison population, and to the extent that plaintiff's claims are based solely on the Due Process clause, they are dismissed. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(inmate has no liberty interest in avoiding "administrative" (non-punitive) segregation from the general prison population);

9

Montanye v. Haymes, 427 U.S. 236, 242 (1976) (as long as the conditions of confinement to which prisoner is subjected are within the sentence imposed and are not otherwise violative of the Constitution, Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight).  Moreover, Plaintiff has not pointed to any state statute or regulation which would create such a protected interest. See Hewitt, 459 U.S. at 470-71. Additionally, the Supreme Court made clear in Sandin v. Connor, 515 U.S. 472 (1995), that even if such language existed to create interests that are protected by the Due Process Clause, these liberty interests "will generally be limited to freedom from restraint which ...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484 (emphasis added).

Here, Johnson's claims are dismissible because he has failed to allege facts demonstrating that his placement in segregation constituted an "atypical, significant deprivation." See Sandin, 515 U.S. at 486.  Johnson does not allege that the defendants' actions in any way affected the duration of his sentence. See id. at 515 U.S. at 487.  Nor

10

does he allege that his placement in segregation and his loss
of privileges, created conditions that are different from
those ordinarily experienced by large numbers of other inmates
serving their sentences in customary fashion.  The fact that
his work status within the prison may have been effected by
his placement in segregation is insufficient to demonstrate a
protected liberty interest.[1]  See Portley-El v. Brill, 288
F.3d 1063, 1066-1067 (8th Cir. 2002) (lengthy pleadings did not
allege a liberty interest, did not describe conditions of
confinement in punitive segregation or administrative
segregation, and did not allege that those conditions were
atypical and significant hardships in relation to the ordinary
incidents of his prison life); Dominque v. Weld, 73 F.3d 1156,
1159 (1st Cir. 1996) (affirming dismissal for failure to state
a claim; prisoner had no liberty interest in remaining in work
release program); McGrath v. Johnson, 67 F. Supp. 2d 499, 513
(E.D. Pa. 1999) (placement in administrative segregation);
Everson v. Nelson, 941 F. Supp. 1048, 1050 (D. Kan. 1996)

---

[1]As part of claim for damages, Plaintiff seeks back pay.
Prisoners have no "fundamental right" to prison jobs, and any
limitation on Johnson's ability to obtain a prison job need only be
"rationally related" to a legitimate governmental interest.  Gilbert
v. City of Cambridge, 932 F.2d 51, 66 (1st Cir. 1991).

(same).  Cf. Shabazz v. Cole, 69 F. Supp. 2d 177, 189-190 (D. Mass. 1999) (no liberty interest re: loss of library privileges).

Accordingly, for the reasons stated above, all of Plaintiff's claims against Commissioner Kathleen Dennehy are dismissed.

III.    Johnson may challenge the procedures used in his disciplinary hearing.

The Supreme Court in Wolff v. McDonnell, held that prisoners challenging discipline procedures under §1983, may seek relief from the district court, which has the authority to decide whether the procedures used by the facility were valid. 418 U.S. 539, 554-5 (1974).

Wolff, laid out several minimum due process requirements regarding prisoner sanctions.  First, the prisoner must be given advance written notice, including reasons for discipline and applicable facts.  Id. at 563.  Second, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Id. at 566.  Third, a written statement by the factfinders as to the

12

evidence relied upon for their decision and the reasons for action. Id. The Court also noted that the prisoner is not entitled to cross examination of witnesses, confrontation of witnesses, or appointment of counsel. Id. at 569. Because a disciplinary hearing is not a criminal matter, a prisoner is not afforded the same rights as a criminal proceeding. Id. at 556. However, an inmate who is subject to disciplinary proceedings has a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. McGuiness v. Dubois, 75 F.3d 794, 797-798 (1st Cir. 1996).

Subsequent to Wolff, two Supreme Court cases further limited the scope of §1983 actions challenging disciplinary proceedings. In Heck, the Court ruled that for a substantive due process violation under §1983 the inmate must first have a favorable finding showing the invalidity of the underlying claim. Heck v. Humphrey, 512 U.S. 477, 478-9 (1994).

Next, the Court in Edwards addressed claims involving procedural due process. The Court held that a procedural due process claim "that necessarily impl[ies] the invalidity of the punishment imposed, is not cognizable under §1983."

Edwards v. Balisok, 520 U.S. 641, 648 (1997).

These cases, addressed sanctions affecting the length or fact of the prisoner's confinement, and not the question whether §1983 relief was still available to challenge procedural methods resulting in other punishments, such as the placement of the prisoner in segregation.

The Second Circuit has determined that a petitioner may bring a §1983 action challenging disciplinary procedures affecting the conditions of his confinement.  See Jenkins v. Haubert, 179 F.3d 19, 21 (2nd Cir. 1999).

This District has also agreed with the decision set out by the Second Circuit. See Shabazz v Cole, 69 F. Supp. 2d 177 (D. Mass. 1999).  In Shabazz, Magistrate Judge Bowler concluded that a claim regarding disciplinary procedures is cognizable under §1983.  Id at 194.  In that case Shabazz brought a §1983 action against the librarian at his prison facility and the superintendent.  Id. at 186.  Shabazz, among other things, claimed improper disciplinary procedures, including that the charges were retaliatory and that there was an improper refusal to allow him to offer witnesses.  Id. at 188.

Similarly, Johnson claims that charges lodged against him

14

were false, and were made in retaliation for filing a grievance against an officer, and as punishment he was placed in segregation.  He also claims he was placed in segregation before he had an opportunity to contest this determination, and was not allowed to present evidence on his behalf, or have his requested representative (not counsel) present.

In connection with allegations of false charges lodged against an inmate, this Court has previously held that so long as the inmate has a hearing on charges, due process is satisfied, <u>unless the hearing itself is defective</u>, such that the prisoner is denied the opportunity to defend himself.  As this Court has noted:

> [P]rison inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2 Cir., 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). *Accord* <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1139-40 (7 Cir., 1984). **The constitutional corrective for such things is the subsequent hearing that the inmate receives on those charges.**[FN8] **As long as the hearing itself provides the minimum due process protections as set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and the prisoner has the opportunity to present and rebut witnesses, then the prisoner has**

> **effectively been accorded his**
> **constitutional due.** <u>See</u>, <u>e.g.</u>, <u>Hanrahan</u>,
> 747 F.2d at 1139-40.

<u>Orwat v. Maloney</u>, 2005 WL 588857 at *13 (D. Mass. Feb 10, 2005) (C.A. 02-10409-WGY)(adoption of Report and Recommendation of Magistrate Judge Collings)(emphasis added). The Court's review of a prisoner's challenge to the due process deficiencies in a disciplinary hearing is thus "limited to whether <u>Wolff's</u> minimum protections were met, and whether the written record provided by the fact finder presents "some evidence" to support the findings made in the disciplinary hearing." <u>Id</u>. (citations omitted).

At least at this juncture a factual question is presented as to the course of the disciplinary hearing, and therefore Johnson's claims will be allowed to proceed. However, notwithstanding that Johnson is permitted to assert a claim for due process violations in connection with the disciplinary hearing, he must also show that a particular person(s) violated his procedural due process rights regarding the hearing. With respect to these claims, only two defendants named in the complaint appear to have sufficient authority to affect Johnson's rights in this manner: Luis Spencer, Superintendent MCI Norfolk, and Michael Lyons, hearing

16

officer.[2]  Johnson fails to establish how any other named
defendants may have denied him his procedural due process in
connection with the prison's decision to discipline Johnson.
Therefore claims that Sergeant Thomas Ficco, Captain David
Sullivan, Donald Mahoney, and Scott Baldwin violated Johnson's
procedural due process rights are dismissed[3].  This Court will

---

[2] This Court makes no determination at this time whether
these defendants may have a qualified immunity against such a
suit. See, e.g., Orwat, 2005 WL 588857 (qualified immunity
applicable where government official does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known); Brennan v. Hendrigan, 888
F.2d 189, 192 (1st Cir. 1989)(objective test for qualified
immunity).

[3] Additionally, it is noted that Johnson makes no claim
that he exhausted his administrative remedies in regards to
his claims. The Supreme Court in Booth v. Churner, declared
that a prisoner, regardless of relief sought, must exhaust
administrative remedies before petitioning a district court
for relief. Booth v. Churner, 532 U.S. 731, 733-4 (2001).
Section 1997e(a) provides that no action shall be brought with
respect to "prison conditions" under §1983 by a prisoner
"until such administrative remedies as available are
exhausted."  42 U.S.C. §1997e(a).  Prison conditions, for
purposes of §1997e(a), have been broadly interpreted to
include "all inmate suits about prison life." Porter v.
Nussle, 534 U.S. 516, 532 (2002).  Thus, plaintiff's claims
about retaliation, improper hearing procedures, and his
inability to practice his religion are subject to the
exhaustion of remedies requirement.  See id.; accord Menina-
Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).
    Failure to exhaust administrative remedies is an
affirmative defense to a §1983 claim.  See Casanova v. Dubois,
304 F.3d 75, 78 (1st Cir. 2002) ("PLRA provides no basis to

permit summonses to issue as to defendants Spencer and Lyons, however, with respect to Plaintiff's claims of due process violations as to the disciplinary hearing.

    IV.  Johnson's Claim for retaliation.

    As noted previously, Johnson claims that the sanctions imposed on him were in retaliation for filing a grievance against an officer, and then later withdrawing the grievance, based on the advise of fellow inmates. He contends that when withdrawing the grievance, other officers intimidated him and placed him in segregation, and he was charged with lying and interfering with officer's duties.  He was found guilty of those charges.

    Conduct not otherwise constitutionally deficient, may be actionable under §1983 if it was done in retaliation for the exercise of constitutionally protected rights.[4] See Ferranti

---

affirm a *sua sponte* dismissal.").  Therefore, this Court will not dismiss Johnson's case on these grounds at this juncture.

    [4]See Kane v. Winn, 319 F. 2d 162 (D. Mass. 2004) (noting cases where inmate retaliation claims were successful, *citing* Walker v. Bain, 257 F.3d 660, 663 (6th Cir.2001) (legal papers confiscated in retaliation for filing grievances);Gomez v. Vernon, 255 F.3d 1118, 1127, 1131 (9th Cir.2001) (injunction upheld protecting prisoners from retaliation from filing

v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980).  To sustain a
claim of retaliatory discipline, a plaintiff first must allege
that he was engaged in conduct that was constitutionally
protected.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D.
Mass. 1999).  Next, the plaintiff must establish that the
protected conduct was a "substantial or motivating factor" in
the prison officials' decision to discipline him.  Id.  The
prisoner must prove that the action would not have been taken
"but for" the alleged improper reason.  Such retaliatory
intent however, is not typically susceptible to proof by
direct evidence that can be averred in a complaint. McDonald,
610 F.2d at 18; see also Leonardo v. Moran, 611 F.2d 397, 398
(1st Cir. 1979).

     In McDonald, the First Circuit stated that the petitioner
must set forth "a chronology of events which may be read as
providing some support for an inference of retaliation."
McDonald, 610 F.2d at 18.  The Court in Shabazz also noted
that such an inference may be drawn from a chronology of

─────────────────────

grievances or lawsuits); Trobaugh v. Hall, 176 F.3d 1087,
1088-89 (8th Cir.1999) (awarding damages for prisoner placed
in isolation for filing grievances); Maurer v. Patterson, 197
F.R.D. 244, 249 (S.D.N.Y. 2000) (retaliatory disciplinary
charge for complaining about the grievance program).

events leading up to the discipline. Shabazz, 69 F. Supp. 2d at 197; See also Ferranti, 618 F.2d at 892 ("an inference of retaliation is warranted from the chronology of events recited.")

At this juncture, Johnson's factual assertions regarding his institution of a grievance against a corrections officer, and the alleged subsequent intimidation and mocking, combined with the institution of disciplinary charges brought against him immediately upon the heels of his withdrawal of such grievance, may be sufficient to establish a chronology of events showing that he was engaged in protected conduct or that such conduct was a "substantial or motivating" factor in any decision to discipline him. However, notwithstanding these factual assertions, Johnson fails to name any liable defendant. He claims that after withdrawing his grievance he received a "letter stating that he was being investigated for crimes against the State or the institution." Johnson also alleges that defendants Spencer and Lyons were in on the conspiracy to retaliate against him.

Accordingly, Johnson's retaliation claims against all defendants (except Commissioner Dennehy) shall be allowed to proceed at this time, and summonses shall issue.

V.    <u>Johnson's claim for violation of the free
      exercise of religion</u>

Johnson claims that defendant Spencer has abridged his
free exercise of his Native American religion.  Specifically,
Johnson claims that: 1) Spencer refuses to allow him to meet
with the Native American Chaplin; 2) Spencer will not allow
him to practice a Smudge and Pipe ceremony; and 3) that
Spencer has ignored his complaints that the library sends him
Christian literature instead of his requested Native American
literature.  These allegations are factually sufficient to
support a cause of action against Superintendent Spencer.

As noted by the Supreme Court in <u>O'Lone v. Shabazz</u>, 482
U.S. 342, 348(1087), "'[i]nmates clearly retain protections
afforded by the First Amendment, including its directive that
no law shall prohibit the free exercise of religion.'" <u>Olone</u>,
482 U.S. at 348.  "'[l]awful incarceration brings about the
necessary withdrawal or limitation of many privileges and
rights, a retraction justified by the considerations
underlying our penal system.'" <u>Id</u>. (citations omitted); <u>See
also</u> <u>Oliver v. Vose</u>, 1991 WL 97453 (D. Mass. 1991)(Zobel, J.).
Additionally, "when a prison regulation impinges on inmates'
constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests."
Turner v. Safley, 482 U.S. 78, 89 (1987). Under this
reasonableness standard, defendant Spencer must show that his
decision not to allow Johnson to participate in ceremonies, or
to meet with other members/leaders of the religion, and his
inaction with respect to Johnson's complaint about receiving
unrequested religious literature in lieu of requested
literature, is reasonably related to a legitimate interest of
the facility.  See Turner, 482 U.S. at 89.

Accordingly, this Court will not dismiss Johnson's claim
sua sponte under §1915(e)(2)(B) since the claims appear to
have an arguable basis.[5]  However, while Johnson states a
sufficient claim that Superintendent Spencer's actions may
violate his right to practice his religion, the complaint is
devoid of any similar allegations against other named
defendants.  Therefore the claim of violation of the free
exercise of religion is dismissed as to all defendants except

---

[5] See Alston v. DeBruyn, 113 F.3d 1036, 1040 (8th Cir.
1994)(vacating sua sponte dismissal by the District Court
where "[t]he record [was] devoid of evidence concerning the
Indiana State Reformatory's policy on religious practices and
the need for the restrictions imposed on inmates."; "Absent
such evidence, the district court had no basis to conclude
that the limitations on Alston's First Amendment rights were
reasonable.").

Luis Spencer.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby ORDERED:

1.    All of Johnson's claims against Commissioner
      Kathleen Dennehy are Dismissed;

2.    Johnson's claims for violations with respect to his
      disciplinary hearing are Dismissed as to all
      defendants <u>except</u> Superintendent Spencer and Hearing
      Officer Michael Lyons;

3.    Johnson's claims with respect to retaliation for
      filing, and later withdrawing, a grievance against an
      officer shall proceed with respect to all named
      defendants except Commissioner Dennehy;

4.    Johnson's claims with respect to denial of religious
      expression are Dismissed as to all named defendants
      <u>except</u> Superintendent Spencer;

5.    Summonses shall issue with respect to all defendants
      <u>except</u> Commissioner Dennehy;

6.    Johnson is directed to serve a copy of this Memorandum
      and Order along with the Amended Complaint, on the
      defendants Luis Spencer, Superintendent MCI Norfolk,
      Captain David Sullivan, Michael Lyons, hearing
      officer, Sergeant Thomas Ficco, Donald Mahoney
      (corrections officer), and Scott Baldwin (corrections
      officer). Upon effectuation of service, Defendants are
      instructed to respond to the Amended Complaint, in
      accordance with this Memorandum and Order.

7.    The U.S. Marshal shall bear all costs of service of
      process on defendants Luis Spencer, Superintendent MCI
      Norfolk, Captain David Sullivan, Michael Lyons,
      hearing officer, Sergeant Thomas Ficco, Donald Mahoney
      (corrections officer), and Scott Baldwin (corrections
      officer). The clerk shall provide Plaintiff with USM
      Form 285 for completion by Johnson, and submission to

the U.S. Marshal, along with copies of the Amended Complaint, this Memorandum and Order, and the summonses. <u>Plaintiff is responsible for directing the U.S. Marshal with respect to service of process.</u> Plaintiff is advised that failure to effectuate service of process in accordance with Fed. R. Civ. Proc. 4 may result in dismissal of this action.

SO ORDERED.

DATED: April 6, 2005          <u>/s/ William G. Young</u>
                              WILLIAM G. YOUNG
                              CHIEF, U.S. DISTRICT JUDGE

24